IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:22-cr-122 |
| PIERRE DE ROMEO SMITH, | |
| Defendant. | |

**OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE VERDICT**

The United States, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and Megan M. Montoya and E. Rebecca Gantt, Assistant United States Attorneys, hereby responds in opposition to the defendant Pierre SMITH's Motion to Set Aside Verdict.  ECF Nos. 108 & 109.  The defendant contends that the jury's guilty verdict should be set aside because one of the jurors failed to accurately answer a question about his interactions with law enforcement during *voir dire*.

The defendant's motion is untimely, as it was filed three-and-a-half months after the ultimate deadline for pre-trial motions.  Further, he has not shown that he is entitled to relief on the merits given the juror's credible testimony at an evidentiary hearing that he did not deliberately conceal information with the intent of serving on the jury.  For either of these reasons, the defendant's motion should be denied.

**I.      Background**

The jury trial in this matter concluded on April 6, 2023.  On April 7, 2023, AUSA Montoya learned that one of the jurors in the trial was the target of a Naval Criminal Investigation Service (NCIS) investigation that was open in the United States Attorney's Office for the Eastern

District of Virginia.   AUSA Montoya promptly reported the matter to her supervisor.   The government then ordered a transcript of the *voir dire* and notified the defendant's counsel.   The *voir dire* transcript was filed on April 13, 2023.   **Exhibit 1**.   The following day, the government filed a sealed pleading notifying the Court of the same.   ECF No. 73.

In its notice, the government explained that one of the seated jurors, Juror Number 5, was served with a target letter pertaining to the NCIS investigation in or around August 2020, conducted a proffer interview in or around June 2021, and on or about March 7, 2023 executed an agreement to extend the statute of limitations.   At the time of the trial, the juror had not been charged, or provided with any formal plea offer.   The government's notice further explained that neither AUSA Montoya nor AUSA Gantt had any knowledge of this information about Juror Number 5 until April 7, 2023, and to their knowledge never met Juror Number 5.   Neither AUSA Montoya nor AUSA Gantt were ever assigned to the NCIS investigation.   Further, in accordance with written policies of the United States Attorney's Office of the Eastern District of Virginia, AUSA Montoya and AUSA Gantt conducted no research on any of the members of the jury venire in this case.   That policy prohibits research using "the internet, publicly-available websites, or information available only to law enforcement" absent an exception granted by the Criminal Chief. Such an exception was sought and denied prior to trial.

The government also requested an evidentiary hearing, noting that the *voir dire* transcript indicated that the juror may have given an incorrect answer to one of the questions in *voir dire*: whether any prospective juror or any members of their immediate family had either been employed by or had other dealings with the United States Attorney's Office, the United States Department of Homeland Security - Homeland Security Investigations (HSI), the Bureau of Alcohol, Tobacco,

Firearms, and Explosives (ATF), or the Virginia Beach Police Department.   Ex. 1 at 14–15.   *See Porter v. Zook*, 898 F.3d 408, 426 (4th Cir. 2018) (holding that evidentiary hearing was warranted to determine whether juror's failure to answer certain questions accurately was an indication of actual bias).   The government also noted that it would not object to an extension of the defendant's 14-day deadline to file a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33(b)(2) to allow sufficient time to resolve these issues.

The Court held a telephonic status conference with counsel on April 20, 2023.   ECF No. 75.   The same day, which was also the deadline for filing post-trial motions, the defendant's counsel filed a motion to extend the time to file post-trial motions, which the Court granted.   ECF Nos. 76 & 77.   The Court did not set a certain deadline, but ruled that it would set a deadline for post-trial motions at the eventual evidentiary hearing.   ECF No. 77.

The Court set an in-person status conference for May 3, 2023.   Several days before the hearing, the defendant's counsel, Trevor Robinson, filed a motion to withdraw.   ECF No. 78. Counsel stated that the defendant "is of the opinion that some unspecified error has occurred during the trial process."   *Id.*

At the status conference, Lawrence Woodward, Juror Number 5's counsel in the NCIS investigation, appeared and had a colloquy with the Court.   The Court also held a hearing regarding Mr. Robinson's motion to withdraw.   It denied the motion, holding that it was untimely, that Mr. Robinson was the defendant's second counsel which had resulted in trial being rescheduled twice, and that based on the *ex parte* inquiry, "no reasonable, good-faith justification existed for being unable to work with Mr. Robinson."   ECF No. 82 at 5.   The Court also ruled on the government's request for an evidentiary hearing for Juror Number 5.   ECF No. 81.   It granted

3

the request, set the hearing for May 31, 2023, and directed the parties to submit advance proposed questions for the Court to ask the juror at the hearing.   *Id.*

At the outset of the evidentiary hearing, the Court noted the proposed questions submitted by both the government and the defendant personally.   **Exhibit 2** (hearing transcript) at 3–7; ECF No. 84-1.   It also received a fully endorsed immunity letter for the juror from Mr. Woodward, in which the government provided Juror Number 5 immunity from prosecution for any false statements during the *voir dire*, conditioned on his complete and truthful testimony at the evidentiary hearing.   Ex. 2 at 10; ECF No. 84-2.   The juror was sworn and answered the Court's questions.   The Court first had a colloquy with Juror Number 5 about the immunity agreement. It confirmed that the juror understood that if he did not testify truthfully and completely at the evidentiary hearing, he could be prosecuted for perjury or obstruction of justice, but that if he did testify truthfully, he could not be prosecuted for any false statements made during *voir dire*.   Ex. 2 at 13–14.

The juror confirmed that he had not raised his paddle to answer any questions affirmatively during *voir dire*.   Ex. 2 at 15.   The Court also asked whether he recalled hearing the question, "Have any of you or any members of your immediate family either been employed by or had dealings with the United States Attorney's Office, Homeland Security Investigations, Department of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms and Explosives, or the Virginia Beach Police Department?"   *Id.* at 16.   The juror replied, "not that specifically," but stated that after thinking about it, he should have raised his paddle to indicate an affirmative response.   *Id.*   When asked to explain why, he stated that he originally thought he was only being asked if he knew the specific parties, such as the individual prosecutor.   *Id.*

4

At sidebar, Juror Number 5 answered further questions about the NCIS investigation.   He confirmed he was a target of that investigation and had been to the United States Attorney's Office on one occasion several years ago.   Ex. 2 at 19.   He also confirmed that there had also been a more recent interaction between his attorney and the United States Attorney's Office involving the statute of limitations.   *Id.* at 23.   He stated he did not know either AUSA Montoya or AUSA Gantt.   *Id.* at 22–23.   Juror Number 5 also stated he had not intentionally failed to disclose his interactions with the United States Attorney's Office in order to make it more likely to be on the jury—in fact, he said he did not want to be selected for the jury at all.   *Id.* at 20.   When asked whether he would treat federal agents any different from any other witness, he responded "[a]bsolutely not."   *Id.*

After the sidebar, Juror Number 5 confirmed he had been provided and diligently reviewed the *voir dire* transcript.   That review confirmed that he answered all of the other questions accurately, including that he would be able to render a just, fair, honest and impartial verdict and that the defendant was presumed innocent.   Ex. 1 at 25–26.   He testified that nothing about his interactions with NCIS or the United States Attorney's Office would have prevented him from being a fair and impartial juror.   *Id.* at 27.   Finally, Juror Number 5 stated he did not reveal those interactions to any other juror.   *Id.*   Neither party had any further proposed questions.   *Id.*

At the conclusion of the hearing, the Court set the post-trial motions deadline for June 21, 2023.   The defense did not file any motion, and preparations continued for the sentencing hearing scheduled for August 9, 2023.   On July 5, 2023, the Probation Office filed a Presentence Investigation Report (PSR) which calculated the defendant's advisory guidelines range as life.   ECF No. 86.   The parties filed their sentencing position papers, ECF Nos. 90 & 91, and on July

28, 2023, the Probation Office filed a final PSR with the same advisory guidelines range and noting the defendant's general objection to the PSR.   ECF No. 52.

Less than a week before the sentencing hearing, on August 4, 2023, the Court filed a letter from the defendant stating Mr. Robinson was "untruthful and misleading."   ECF No. 93.   Mr. Robinson immediately filed a motion to withdraw.   ECF No. 94.   The Court held a hearing on these motions on August 9, 2023.   The Court found good cause and granted the motions.   ECF No. 96.   On August 10, 2023, defendant's current counsel was appointed to represent the defendant.   The Court held a telephonic status conference on September 5, 2023, during which the defendant's counsel noted its intent to file post-trial motions.   The government noted it may have an objection on timeliness grounds in addition to opposing it on the merits.   The Court directed the defendant's counsel to file any post-trial motion by October 6, 2023, and noted that the government could maintain any arguments regarding timeliness notwithstanding the deadline. ECF No. 97.

## II.   <u>Argument</u>

While the defendant does not identify a specific Federal Rule of Criminal Procedure, given his ultimate request for the Court to "set aside the verdict and order a new trial," ECF No. 109 at 7, the government presumes he is relying on Rule 33, rather than Rule 29.   Under Rule 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."   Fed. R. Crim. P. 33(a).   Rule 33 motions "are highly disfavored motions that a court should grant only sparingly." *United States v. Ali*, 991 F.3d 561, 570 (4th Cir. 2021) (internal quotation marks omitted).

The Court should deny the defendant's motion on either of two independent bases. First, his motion is untimely. Rule 33 sets forth a strict 14-day deadline for filing such motions. Fed. R. Crim. P. 33(b)(2). Here, the defendant's motion was filed six months after the jury verdict and more significantly, three-and-a-half months after the Court's ultimate June 21, 2023 deadline for post-trial motions. While the Federal Rules allow late filing if the Court finds "excusable neglect," Fed. R. Crim. P. 45(b)(1)(B), the defendant has not even attempted to show the existence of any excusable neglect.

Second, the defendant is not entitled to relief on the merits. To prevail on a claim that a juror was not truthful during *voir dire*, the defendant must make three showings: 1) that a juror failed to answer honestly a material question, 2) that a correct response would have provided a valid basis for a challenge to cause, *and* 3) that the fairness of the trial was affected by the juror's motives. While the first factor has been established by the juror's admission that he should have raised his paddle to indicate prior interactions with the United States Attorney's Office, the defendant has failed to show that the juror should have been struck for cause or that the fairness of the trial was affected.

For these reasons, the Court should deny the defendant's motion.

## A. The Defendant's Motion is Untimely

Federal Rule of Criminal Procedure 33 sets forth two different deadlines for filing a motion for a new trial. First, a motion "grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). Second, a motion based on any other ground "must be filed within the 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2).

7

The 14-day deadline is applicable here.   Although the information about Juror Number 5 was not discovered until after the trial, the Fourth Circuit has explained that the term "newly discovered evidence" is "limited to where the newly discovered evidence relates to the elements of the crime charged."   *United States v. Blackwell*, 436 F. App'x 192, 198 (4th Cir. 2011) (quoting *United States v. Hanoum*, 33 F.3d 1128, 1130 (9th Cir. 1994)).   In *Blackwell*, the Fourth Circuit held that the 14-day deadline applied and barred a motion based in part on a claim of juror bias as untimely where it was filed several months after the verdict.   *Id.*   Here, the defendant's motion was filed three-and-a-half months after the Court's ultimate deadline for post-trial motions of June 21, 2023.   Thus, it is clearly untimely under Rule 33(b)(2).

Although the defendant never moved for an extension before the motions deadline expired, under Federal Rule of Criminal Procedure 45(b)(1)(B) the Court "may extend the time . . . after the time expires if the party failed to act because of excusable neglect."   *See Blackwell*, 436 F. App'x at 198 (holding that the district court properly refused to consider an untimely Rule 33 motion where the defendants "failed to present any circumstances suggesting that their filing was delayed by 'excusable neglect'").[1]

---

[1] In *Eberhart v. United States*, 546 U.S. 12 (2005), the Supreme Court held that Rule 33 was not jurisdictional, but that it was nonetheless a "claim processing rule."   *Id.* at 19.   It explained that such "claim-processing rules thus assure relief to a party properly raising them."   *Id.*; *see also id.* at 18 (noting that a when the government objected to an untimely filing under claim-processing rule, "the court's duty to dismiss the appeal was mandatory").   Since *Eberhart*, the Fourth Circuit has affirmed that Rule 33 is a claims-processing rule.   *See, e.g.*, *United States v. Martin*, 662 F.3d 301, 308 (4th Cir. 2011).   However, in unpublished opinions it has noted that in light of amendments to Rule 45 following *Eberhart*, an untimely motion may be considered if the defendant shows excusable neglect.   *United States v. Jones*, 658 F. App'x 188, 191 (4th Cir. 2016) ("Under Fed. R. Crim. P. 45(b)(1)(B), a district court may extend the deadline for the filing of a new trial motion after the time expires if the movant failed to act because of excusable neglect. The advisory committee notes to the 2005 and 2009 amendments state that this excusable neglect rule applies to the time limit for motions filed under Fed. R. Crim. P. 33.").   Other circuits have

The Fourth Circuit has not specifically addressed the question of what constitutes excusable neglect under Rule 45(b)(1)(B) for the purpose of late-filed Rule 33 motions. *See United States v. Turner,* No. 3:97–CR–20–01, 2010 WL 6267790, at *2 (N.D. W.Va. Aug.13, 2010). However, it has noted that "[e]xcusable neglect generally has the same meaning throughout the federal procedural rules." *Martinez v. United States*, 578 F. App'x 192, 194 n. * (4th Cir. 2014). And in other contexts, it has looked to the factors the Supreme Court set forth in *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 395 (1993) ("the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith").  *See Fernandes v. Craine*, 538 F. App'x 274, 275–76 (4th Cir. 2013); *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 220 (4th Cir. 2011).  *See also Munoz*, 605 F.3d at 369 (6th Cir.) (applying the *Pioneer* factors in evaluating excusable neglect in the Rule 33 context).

The Fourth Circuit has emphasized that "[e]xcusable neglect' is not easily demonstrated, nor was it intended to be."  *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996) (internal quotation marks omitted).   And "[m]erely establishing excusable neglect does not entitle one to relief from the filing deadline; even upon a showing of excusable neglect, whether to grant an enlargement of time still remains committed to the discretion of the district court."  *Id.* at 532.

---

held the same in published opinions.  *United States v. Munoz*, 605 F.3d 359, 367–68 (6th Cir. 2010); *United States v. Boesen*, 599 F.3d 874, 879 (8th Cir. 2010), *as corrected* (Apr. 1, 2010); *United States v. Owen*, 559 F.3d 82, 84 (2d Cir. 2009) (citing Fed. R. Crim. P. 33 advisory committee's notes (2005 Amendments));; *cf. United States v. Miranda*, 220 F. App'x 965, 967–68 (11th Cir. 2007).   *See also* 3 Fed. Prac. & Proc. (Wright & Miller) Crim. § 590 (5th ed.).

Although "the burden of showing excusable neglect is on the party asserting it," the defendant has made no attempt whatsoever to demonstrate any reason for his untimely filing. *Williams v. Virginia, State Bd. of Elections*, 524 F. App'x 40, 42 (4th Cir. 2013).  *See also United States v. Foreman*, No. 2:10-CR-00026-H, 2011 WL 677270, at *5 (E.D.N.C. Feb. 15, 2011) ("Defendant must establish excusable neglect . . . .").   Because he has failed to make the requisite showing, his motion must be denied as untimely.  *See United States v. Knight*, No. 1:09-CR-00005, 2011 WL 703924, at *5 (D.V.I. Feb. 18, 2011), *aff'd*, 700 F.3d 59 (3d Cir. 2012) ("Defendant's Rule 29 Motion is entirely silent on why it was filed 85 days late. Accordingly, the Court finds that Defendant has failed to show excusable neglect and that her Motion is therefore untimely.").

Even if the Court were to consider the existence of excusable neglect, it is unsupported in the record.   The Fourth Circuit has "stressed" that the "reason for the delay" is "the most important" factor in evaluating excusable neglect.  *Fernandes*, 538 F. App'x at 275–76 (internal citation and quotation omitted).   The record reflects nothing more than a pattern of behavior by the defendant to deliberately delay the proceedings in this case by seeking removal of his court-appointed counsel.   The counsel who filed the instant motion is defendant's third counsel, who was appointed after the defendant sought removal of his second counsel on the eve of the sentencing hearing where he would face an advisory guidelines range of life.   A district court recently rejected the argument that hiring new counsel can be a valid basis for extending Rule 33 deadlines, noting that "[w]ere such a rule to exist, defendants would constantly seek new attorneys, even if replacing competent ones, simply to have an end-run around Rule 33(b)(2)'s 14-day deadline."  *Knowles v. United States*, No. 11-CR-630 (KMK), 2022 WL 999078, at *22–23

10

(S.D.N.Y. Mar. 30, 2022) (internal quotation and citation omitted).

**B.  The Defendant Has Failed to Show a New Trial is Warranted**

Even if the defendant's motion were timely, he has failed to show that he is entitled to relief on the merits of his juror bias claim under *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984).   In order to show a violation of his Sixth Amendment rights, the Fourth Circuit has "explained that a juror's bias may be established by showing (1) that a juror failed to answer honestly a material question on *voir dire*; and (2) that a correct response to that question would have provided a valid basis for a challenge for cause.   Additionally, a litigant must show that the fairness of his trial was affected either by the juror's motives for concealing the information or the reasons that affect the juror's impartiality."   *Conaway v. Polk*, 453 F.3d 567, 584–85 (4th Cir. 2006) (internal quotations and citation omitted).

Although the juror's failure to disclose his prior interactions with the United States Attorney's Office did constitute an incorrect answer to one of the *voir dire* questions, there is nothing in the record that indicates that failure was anything but a mistake, and there is certainly no indication that the juror intentionally lied in the hopes of being on the jury.   Instead, the juror testified under oath at the evidentiary hearing that he had mistakenly, and not intentionally, failed to disclose that he was the target of a federal investigation, reaffirmed that he could be a fair and impartial juror, and explained that he had hoped not to be on the jury at all but was willing to do his duty.

The defendant's attempts to infer an improper motivation and lack of credibility in the juror lack a basis in the record.   Notably, the juror testified at the evidentiary hearing after receiving immunity for any false statements during *voir dire* so long as he testified truthfully at the hearing.

11

As numerous courts have found, such immunity is evidence of the juror's credibility.   *See Hatten v. Quarterman*, 570 F.3d 595, 603 (5th Cir. 2009) *United States v. Maxwell*, No. 1:20-CR-330 (AJN), 2022 WL 986298, at *8 (S.D.N.Y. Apr. 1, 2022); *United States v. Nix*, 256 F. Supp. 3d 272, 280 (W.D.N.Y. 2017).

Therefore, the defendant is not entitled to a new trial under the applicable legal standards.

1.   *Whether the juror failed to honestly answer a material question*

First, the defendant must show that "a juror failed to answer honestly a material question on *voir dire*."   *Conaway*, 453 F.3d at 585.   Here, the juror acknowledged at the evidentiary hearing that he had incorrectly answered one of the questions on *voir dire* by failing to disclose previous interactions with the U.S. Attorney's Office.   Ex. 2 at 16–17.   Although the record does not show that the juror was intentionally dishonest, as discussed further below, the Fourth Circuit has held that "the *McDonough* test has been applied equally to deliberate concealment and to innocent non-disclosure."   *Conner v. Polk*, 407 F.3d 198, 205 (4th Cir. 2005).   Thus, the first factor is satisfied.

2.   *Whether a correct response would have formed a valid basis in a challenge for cause*

The defendant also cannot show that had the juror disclosed that he was the target of an NCIS investigation, he should have been struck for cause.   First, the defendant does not cite any precedent showing that a target of a federal investigation is categorically subject to for cause disqualification.   Indeed, the Fourth Circuit has long "reject[ed] a per se rule of disqualification" and refused to "promulgat[e] rules of automatic disqualification."   *United States v. Turner*, 389 F.3d 111, 115–16 (4th Cir. 2004).   In the only case undersigned counsel has located that addresses whether a target of a federal investigation should be automatically disqualified from a jury, the

district court indicated categorical disqualification would be inappropriate:

> Defendants have cited no authority for the proposition that a prospective juror who has been arrested but not convicted of a crime faces a *per se* bar to jury service in a case involving entirely unrelated crimes. Indeed, during *voir dire*, [the defendant] argued vigorously against the Government's challenge to a prospective juror who failed to disclose that she had been the target of a securities fraud investigation and had been questioned by the United States Attorney's Office and the Securities and Exchange Commission.

*United States v. Stewart*, 317 F. Supp. 2d 432, 439 (S.D.N.Y. 2004).

The *voir dire* questions regarding the venire's criminal history also indicates that being involved in an investigation is not automatically disqualifying. The prospective jurors were asked whether they had been convicted of a felony, Ex. 1 at 12–13, whether they had ever been accused of sexual abuse, Ex. 1 at 34, and whether they had ever been a defendant, witness or victim in a criminal matter in a court, Ex. 1 at 21, but they were never asked whether they were being or had been investigated for one. Regarding a relationship with the U.S. Attorney's Office, one prospective juror disclosed she had been a long-time paralegal with the FBI, but stated she could be impartial and was not struck for cause. Ex. 1 at 15–16, 51.

Given the lack of a per se disqualification, the ultimate question is whether the juror's limited interactions with the U.S. Attorney's Office were sufficient to create an inference of bias that can be implied. *Conaway*, 453 F.3d at 596; *United States v. Odum*, 65 F.4th 714, 723 (4th Cir. 2023) ("In deciding whether to excuse a juror for cause, the ultimate question is whether the juror could be fair and impartial and decide the case on the facts and law presented." (quotations and citation omitted)). Only "extreme situations" justify a finding of implied bias. *Conner*, 407 F.3d at 206. Such situations include "a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the

criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Id.* (citation and quotation omitted).

None of those extreme circumstances exist here.   Further, the juror's limited interactions with the U.S. Attorney's office, which did not involve either of the attorneys prosecuting the defendant at trial, who in turn had nothing to do with the juror's investigation, are nothing like "close kinship between a juror and a participant in a criminal trial," which the Fourth Circuit has held "constitutes a classic form of juror impartiality." *Conaway*, 453 F.3d at 586.   Further, the juror's investigation concerned NCIS, and none of the agencies involved with the defendant's investigation.   He also expressed that the NCIS investigation concerned a "conflict of interest," Ex. 2 at 18, which has no relation to the charges at trial of sex trafficking, child pornography, drug trafficking, and illegal possession of a firearm.

Testifying under a grant of immunity, the juror reaffirmed that he was able to be fair and impartial at the trial notwithstanding his interactions with the U.S. Attorney's Office, and that his answers at the time were accurate.   Ex. 2 at 19–20, 26.   *See Gardner v. Ozmint*, 511 F.3d 420, 424 (4th Cir. 2007) (affirming the reliance on "the juror's affirmation during *voir dire* that she could grant a fair trial to both sides" as indicative of her not being "biased against any party"). Because the juror "was credible and did not intentionally withhold information during voir dire," there is no indication of impartiality. *Porter v. White*, 23 F.4th at 332.

The defendant speculates that the juror may have "harbored . . . a desire to assist the Government in securing a conviction perhaps in the misguided belief that it would aid his own investigation."   ECF No. 109 at 5.   Not only is there no evidence of such a belief, but such an inference would incredibly require the juror to believe that he would curry favor with the

14

government by lying under oath at *voir dire*, an act itself subjecting himself to potential additional federal prosecution.

    3.  *Whether the fairness of the trial was affected*

Even if the second prong of the *McDonough* test were satisfied, "a juror's bias is only established if the juror's motives for concealing information or the reasons that affect the juror's impartiality can truly be said to affect the fairness of the trial."   *Conaway*, 453 F.3d at 588 (punctuation and citation omitted).   While the Fourth Circuit has held that this factor is satisfied where there is evidence that a juror deliberately concealed information, and did so in order to be selected on the jury, there is no such evidence here.   *Id.*

First, there is no indication that his failure to disclose constituted intentional dishonesty. Where a juror "did not intentionally withhold information during voir dire" or was "careless in considering his responses," the Fourth Circuit has held that a defendant cannot make the requisite showing under *McDonough*.   *Porter v. White*, 23 F.4th 322 (2022).   *See also United States v. Colombo*, 869 F.2d 149, 152 (2d Cir. 1989) (considering whether "the failure of the juror to disclose relevant facts was deliberate").

Here, the juror explained in his testimony at the evidentiary hearing that during *voir dire*, he had understood the relevant question to refer to whether he had any prior interactions with the specific representatives of the United States Attorney's Office and agency representatives in Court. Ex. 2 at 16.   Not only did he testify credibly, but his explanation was reasonable because the question occurred immediately after the Court had those personnel stand up to be identified:

> COURT:  Okay.   I am going to go through with you who the parties are in this case as well as any witnesses that may be called, and then I am going to ask you if you know any of these people.

> So the parties in this case are the United States of America and the defendant, Pierre de Romeo Smith.
>
> The government is represented by Assistant United States Attorneys Emily Rebecca Gantt and Megan Montoya and William Homer, who I don't think is here currently.   And also sitting just behind or in front of them is John Robert Thomas, who is an agent with the Homeland Security Investigations.
>
> Could you all stand?   Did you already do that?
>
> Does anyone know any of these individuals with the government?
>
> The other investigating agencies that are involved in this case include: The Department of Homeland Security Investigations, the Bureau of Alcohol, Tobaccos, Firearms and Explosives, and the Virginia Police Department.
>
> Ms. Montoya, did I get everyone there?
>
> MS. MONTOYA: Yes, Your Honor, thank you.
>
> COURT: Okay.   So have any of you or any members of your immediate family either been employed by or had any other dealings with the United States Attorney's Office or any of these agencies?

Ex. 2 at 14–15.   The juror also affirmed that throughout *voir dire*, he "thought [he] listened very carefully and wanted to respond correctly to all of the questions."   *Id.* at 16.   And, he testified that he did not intentionally provide an inaccurate answer to any questions.   Ex. 2 at 25.

The juror's testimony that his failure to disclose was not intentional is also credible because his interactions with the U.S. Attorney's Office were limited to a single meeting, which had occurred several years ago, Ex. 2 at 19, and a more recent letter, which his attorney had received from the U.S. Attorney's Office, *id.* at 23.   His testimony at the evidentiary hearing also revealed a potential confusion about the nuances of the relevant prosecution entities: he responded in the affirmative to the question of whether he had met "with *the* U.S. Attorney," *id.* at 19 (emphasis added), and also referred to the U.S. Attorney's Office as "the Attorney General."   *Id.* at 23.

There is also no evidence that juror concealed information for the purpose of being selected for the jury.   Instead, when asked whether he wanted to be selected, he credibly and emphatically responded "totally the opposite."   Ex. 2 at 20.   And, as noted above, assuming such a motive

16

requires an illogical and implausible chain of inferences that the juror thought publicly lying under oath in federal court and in front of prosecutors from the U.S. Attorney's Office would help him avoid further prosecution.

**III.    Conclusion**

The defendant's motion is untimely, and he has failed to show he is entitled to relief on the merits.   Either provides an independent basis for denying his motion for a new trial.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/s/_____
E. Rebecca Gantt
Megan M. Montoya
Assistant United States Attorneys
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address - rebecca.gantt@usdoj.gov
megan.montoya@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on October 20, 2023, I electronically filed the foregoing motion with the

Clerk of Court using the CM/ECF system, which will serve all counsel of record.

By: _____/s/_____

E. Rebecca Gantt
Assistant United States Attorney
Virginia State Bar No. 83180
United States Attorney's Office
101 W. Main St., Suite 8000
Norfolk, Virginia 23510
Office:   (757) 441-6331
Fax:      (757) 441-6689
Email:    rebecca.gantt@usdoj.gov

18