# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

**UNITED STATES OF AMERICA,**

    v.                             **Criminal No.: 0422 2:22-CR-122**

**PIERRE DE ROMEO SMITH**
    **Defendant,**

---

### SUPPLEMENTAL POSITION OF THE DEFENDANT ON SENTENCING

COMES NOW the Defendant, Pierre De Romeo Smith, by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the Sentencing Guidelines and Policy Statements, as well as this Court's Sentencing Order, and hereby represents that the Defendant has reviewed the Probation Officer's Pre-sentence Report. Mr. Smith, through his new counsel, accordingly sets forth the following as his position on sentencing to supplement the position memorandum filed by prior counsel (ECF 90):

### OBJECTIONS TO THE PRE-SENTENCE REPORT

Mr. Smith, through counsel, has previously advised the probation office and the government as to the a number of objections to the presentence report. In addition to the objection filed by prior counsel and articulated in the original position paper (ECF 90), Mr. Smith further submitted the following objections:

    1.    Mr. Smith objects to the 2-level enhancement for Obstruction of Justice, noted on paragraphs 30 through 33, 50, and 58. The information contained within these paragraphs appears to be derived solely from confidential source(s). There is no information to corroborate or substantiate the claims of the CS, or to confirm or even

1

  test the veracity of his/her statements. There is no information about CS's background, criminal record, pending charges which would indicate a motive to fabric, et cetera. CS does not state whether or not he personally overheard Smith making such statements, whether he heard them from Davis, and whether or not Davis was being truthful. Assuming that Davis did in fact contact Jane Doe—a fact which is not included in the PSR—it remains questionable whether or not Davis did this on his own or by instruction of Smith. Without more evidence to support the former proposition, Mr. Smith's guidelines should not be enhanced by 2-levels based on the uncorroborated, unverified statement of a confidential source.

2. Related to the above objection, Mr. Smith objects to the inclusion of uncorroborated allegations contained throughout the relevant conduct, notably in paragraphs 17-20. Serious allegations of violent criminal activity and obstructive behavior are levied against Mr. Smith, seeming to rely solely on uncorroborated and unverified confidential sources who potentially have a motive to fabricate. While Mr. Smith acknowledges the broad authority of probation in terms of including relevant conduct, not all unsubstantiated or uncorroborated allegations should be included and considered. Alternatively, Mr. Smith requests a reference noting that these allegations are not verified or corroborated.

3. For the reasons set forth above, Mr. Smith objects to paragraphs 67-74. These allegations—while not part of relevant conduct—are prejudicial to Mr. Smith, uncorroborated, and should not be included or considered.

4. Paragraph 54 - Mr. Smith objects to 2-level enhancement for distribution. The sexually explicit photographs which were recovered in this case were not utilized in

      the advertisements and therefore not distributed. The photographs used in the advertisements do not meet the definition of "sexually explicit content" under 18 U.S. Code § 2256.

5.     Paragraphs 44 and 66 – Mr. Smith avers that the total offense level should be calculated as 43 because the current offense level, prior to objections, exceeds 43.

## APPLICATION OF THE 18 U.S.C. §3553 SENTENCING FACTORS IN SUPPORT OF A VARIANT SENTENCE OF 180 MONTHS

### Introduction

Pursuant to 18 U.S.C. § 3553(a), the sentencing court is directed to impose a sentence that is "sufficient, but not greater than necessary" to achieve the goals set forth set forth by Congress, including the imposition of a just punishment. In determining the minimally adequate sentence § 3553 also directs the court to consider, among other factors:

(1) the specific nature and circumstances of the offense,

(2) the unique history and characteristics of the defendant,

(3) the need to foster deterrence and promote respect for the law,

(4) the need to protect the public from further crime,

(5) the need to address any educational, vocational, medical, or therapeutic concerns with respect to the individual defendant, and

(6) the kinds of sentences available, including the ranges and category of offense.

In assessing these factors, the statute further requires that the court consider the applicable sentencing guidelines. The court, however, "may not presume that the Guidelines range is reasonable," and instead "must make an individualized assessment based on the facts presented." *Gall v. United States*, 128 S. Ct. 586, 597 (2007), *see also Rita v. United States*, 551 U.S. 338, 351

(2007) ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."). The sentencing guidelines are merely "a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350.

As the arguments below bear out, a sentence of 180 months is the appropriate disposition in this matter. Recognizing that this is a significant variance from the guidelines, the sentence itself is reflects the seriousness of the offense while taking into consideration all of the other factors as mandated by Congress under §3553.

In sum, a sentence of 180 months is entirely sufficient to serve the goals of sentencing, and is not greater than necessary.

## Nature and Circumstances of the Offense

Mr. Smith was convicted of all of the charges in the indictment following a multi-day jury trial. The evidence presented at trial, and subsequently described within the Presentence Report, are undoubtedly serious. This factor clearly weighs against Mr. Smith. However, the guideline recommendation of life addresses the severity of the charges far in excess, and thus the other factors must be weighed accordingly against the circumstances.

## History and Characteristics of the Defendant

18 U.S.C. §3553's directive that the court must consider the unique history and characteristics of the defendant embodies the long-held principle that a sentencing court must consider the defendant's crimes not in a vacuum, but in light of his or her entire life.

Mr. Smith's background is discussed in greater length below (The Kinds of Sentences Available). He sadly spent the majority of his life in and out of the criminal justice system, entering the juvenile justice system as a young teenager at 14 and ultimately being committed to the Department of Juvenile Justice once all services has been "exhausted." Mr. Smith describes a

childhood marred by physical abuse and drug use, and his criminal history alone is sufficient to infer that he lacked familial and community support structures that help and encourage youth such as himself to avoid criminality. He ultimately is the only person who can be responsible for his own actions. However, his history and background are important sentencing factors and surely his childhood and upbringing are a primary factors in how he lived his life.

A number of individuals wrote character letters on Mr. Smith's behalf which reveal more of an insight as to who he is as a person.

Ms. DeShannon Goddard, one of Mr. Smith's friends who wrote a character letter on his behalf, describes a man that is clearly not reflected in the presentence investigation and criminal history. She describes him as stepping into the role of a father while in a relationship with her, helping her children with school projects and homework. She further describes Mr. Smith as being well loved by the rest of her family.

Other letters include one from his sister Ms. Ngoran who discusses an inherent kindness and willingness to help others, as well as his relationship with his children and his desire to mentor. Another letter from Ms. Dunnington describes how Mr. Smith is a godfather to his child. That child himself wrote a letter, stating that Mr. Smith was "thoughtful, loving" and caring.

Mr. Smith recognizes that these descriptors starkly contrast with his criminal history and the nature and circumstances of this offense. The presentence report is but a snapshot into his life though. He clearly has friends, family, loved ones who will hopefully support him upon his release. The sentence imposed upon Mr. Smith will likely be the longest period of incarceration he has ever faced. He is now at a point in his life where he possibly has more years behind him than ahead of him; a statement that will almost certainly be true when and if he is released. If the primary goal in this case is to specifically deter Mr. Smith from criminal activity, addressed below,

then this fact alone will weigh heavily upon him.

## **The Need to Address Any Educational, Vocational, Medical, or Therapeutic Concerns**

Mr. Smith physical health is generally good, except for high blood pressure and previous injuries. In regards to drug use, Mr. Smith reports that he began drinking alcohol and using marijuana at a very young age. He engaged in cocaine and ecstasy on a regular basis as an adult. He would likely benefit from therapy and mental health counseling.

## **The Kinds of Sentences Available**

The Pre-sentence Report—prior to any objections—sets forth a total offense level of 44 and a criminal history category of VI. These guidelines call for a life sentence.

In its position paper, the Government calls for a sentence of less than life, specifically forty (40) years. Mr. Smith appreciates the downward variance suggested by the Government considering the guideline recommendation. However, a sentence of forty years would effectively serve as a life sentence for Mr. Smith who, at 41 years old, would very possibly—if not likely—die while incarcerated. While the nature and circumstances of the alleged offense are, as stated, unquestionably serious, the offense did not a crime of murder, rape, armed robbery, or similar acts by which a life sentence is often appropriate—even for those without an extensive criminal history. This is not to undermine the seriousness of the offense, but to place the guidelines recommendation—which is driven primarily by Mr. Smith's criminal history—in the appropriate contextual comparison with the offense itself.

Mr. Smith's criminal history category of VI is the determining factor for the severity of the guidelines. His criminal history began at an incredibly young age: 14 years old. He has sadly spent the entirety of his life in and out of various levels of incarceration, beginning with a commitment to the Department of Juvenile Justice. It is clear that attempts to intervene and

rehabilitate him—the ultimate goal of the juvenile justice system—were unsuccessful. What is not clear, however, is the level of effort and the extent of resources utilized to help in this endeavor. While the reports indicate that he was assigned to the post-Dispositional program and other services regularly employed in the Commonwealth of Virginia, the details of those services are sparse beyond statements that he was unsuccessful or uncooperative. While it is true, as the Government notes, that "the defendant continued to violate the law," there is no indication as to the quality of the services Mr. Smith actually received during these formative years of his youth. Mr. Smith ultimately is solely responsible for his own actions. However, his criminal convictions during such a young age of his life undoubtedly raise the specter that perhaps the juvenile justice system and the resources allocated within it ultimately failed him as well. The court should consider his criminal history not only for the aggravating factor that is appears to be on his face, but also as potentially a by-product of a childhood that is more aligned with Mr. Smith's recollection of his youth: where he documents physical abuse by his mother as well as drug addiction issues within the family.

His criminal history appears to have snowballed from 14 years of age onward. This ultimately brings him before the court with sentencing guidelines recommending incarceration for the rest of his life. Mr. Smith asks the court to consider this sentence and its recommending while simultaneously questioning the circumstances that led such a young teenager to begin a life that ended him up before this honorable court.

### The Need to Foster Deterrence and Promote Respect for the Law, and The Need to Protect the Public from Further Crime

Congress further directs the Court to consider the need to foster deterrence and promote respect for the law, and also to protect the public from further crime. Generally speaking, deterrence can be classified into either general or specific deterrence.

In regards to general deterrence, that is the ability to dissuade others from engaging in similar conduct, a sentence of 180 months adequately addresses Congress's concern. This is an incredible length of time of incarceration. The prospect of spending fifteen years, or almost a quarter or fifth of one's life, behind bars would surely dissuade others who may be contemplating similar criminal activity.

Likewise, the sentence would have the effect of specifically deterring Mr. Smith. Mr. Smith comes before having been convicted before and incarceration before. However, this amount of incarceration—regardless of the objections that he levies as to the verdict—would surely encourage him to stay far away from any other criminal activity upon his release. During this period of incarceration, the public would of course be protected, and the sentence is of such a degree that it would promote and foster respect for law. Finally, the sentence would serve as punishment.

From a scientific and data-driven standpoint, numerous studies have been conducted addressing the correlation between the severity of punishment and deterrence. See *Valier Wright*, DETERRENCE IN CRIMINAL JUSTICE, EVALUATING CERTAINTY VS. SEVERITY OF PUNISHMENT, THE SENTENCING PROJECT, at 1 (Nov. 2010) *see also* Anthony N. Doob & Cheryl Marie Webster, Sentence Severity and Crime: Accepting the Null Hypothesis, 30 Crime & Justice 143, 146 (2003) (finding that harsher sentences do not deter criminal activity). A sentence of life, or one that is effectively life as the Government proposes, would not deter future criminal activity on either Mr. Smith (should he in fact be released) or others.

### The Need to Avoid Unwanted Sentence Disparities

Perhaps the most important consideration for the court is the need to avoid unwanted sentencing disparities.

In this district, defendants Hernandez, Gonzael, Rodriguez, Beato, Martinez-Dominguez, and Perez (1:19-cr-218) were all sentenced for a scheme involving a minor victim who was

exploited for commercial sex purposes at a brothel. Clients were recruited using WhatsApp and other computer services, and the minor victim was sexually exploited by over 50 men. These defendants were each sentenced to approximately 15 years, save for Perez who was sentenced to six and a half years for enticement.

In 2022, Denzel Loftin (2:23-CR-44, 2:23-CR-47) was sentenced to 25 years for a case involving multiple underage girls who had gone missing from several states, including a 14 year old from Colorado and a 17 year old from Missouri. Loftin not only trafficking the victims, but also engaged in physical violence against them. That case, in which the presiding judge of this matter also presided over, bares striking similarities to the case at bar. Mr. Loftin's guidelines recommended a life sentence in the matter as well.

## **CONCLUSION**

The court shall consider each of the above factors in light of the applicable recommended sentencing guidelines range and be mindful of the directive to avoid unwarranted disparities in the sentences of similarly situated defendants. For the reasons set forth above, the Defendant, Mr. Smith, by counsel, respectfully submits that a sentence of 180 months. and a period of supervised release will accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553. The offense is undoubtedly serious, however this sentence adequately addresses that severity while also taking into account all of the applicable factors, including serving as a just punishment and providing deterrence and safety. It will result in Mr. Smith being incarcerated for the majority of the remainder of his life, and accordingly it is sufficient but not greater than necessary.

Respectfully submitted,

PIERRE DE ROMEO SMITH

By Counsel

_____/s/_____
S. Mario Lorello
VSB# 80629
Counsel for Defendant
ZOBY & BROCCOLETTI, P.C.
P.C. 6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
mario@zobybroccoletti.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of May, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Megan Montoya, Esq.
Rebecca Gantt, Esq.
Assistant U. S. Attorney
Office of the U. S. Attorney
101 W. Main Street, Suite 8000
Norfolk, VA 23510

_____ /s/_____
S. Mario Lorello
VSB# 17869
Counsel for Defendant
ZOBY & BROCCOLETTI, P.C.
P.C. 6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026

I hereby certify that on the 30th day of May, 2024, I caused a true and correct copy of the foregoing Motion to be mailed to the following non-filing user:

Mack Coleman
United States Probation Officer
U.S. Probation Office
600 Granby Street, Suite 200
Norfolk, VA 23510

_____/s/_____
S. Mario Lorello

>VSB# 80629
>Counsel for Defendant
>ZOBY & BROCCOLETTI, P.C.
>P.C. 6663 Stoney Point South
>Norfolk, VA 23502
>(757) 466-0750
>(757) 466-5026
>mario@zobybroccoletti.com