IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA,

    v.                                            Criminal No.: 0422 2:22-CR-122

PIERRE DE ROMEO SMITH
    Defendant,

---

### MEMORANDUM OF LAW/BRIEF IN OPPOSITION TO GOVERNMENT'S REQUEST TO LIMIT SCOPE OF CROSS-EXAMINATION

    COMES NOW the Defendant, Pierre De Romeo Smith, by counsel, and submits the following brief in opposition and memorandum of law in order to assist the Court with issues raised in the Government's Response to Mr. Smith's objections (ECF 121), to wit the Government's request for the court to preemptively sustain objections if the defense asks questions that could potentially reveal the Government's confidential source. In support thereof, Mr. Smith avers the following:

### LAW AND ARGUMENT

    Mr. Smith objects to the 2-point enhancement for obstruction of justice, and he further objects to the information contained within the report that alleges that Mr. Smith threatened Jane Doe #2 (hereafter referred to as Jane Doe). The basis of the objection is straightforward: nowhere in the presentence report do the case agents relay or provide any information that it was in fact Mr. Smith, and not another, who threatened or targeted Jane Doe or other witnesses. There is no information that would indicate that the confidential source ("CS") personally or directly knew that Mr. Smith threatened Jane Doe. There is no nexus between CS's allegations and Mr. Smith, other than CS's claims. He does not state that he personally talked to Mr. Smith, or even heard

1

from others who personally talked to Mr. Smith. In other words, CS's information amounts to the hearing and relaying of rumors, and then speculating and presuming that it was Mr. Smith. This cannot stand for the basis of an obstruction enhancement that elevates Mr. Smith's guidelines to life, nor can it stand as information that the Court would consider in assessing an appropriate sentence.

  The Government contends that CS's information is corroborated in a variety of ways. First, by Jane Doe herself. This fails for the very same reasons as above. Certainly, if Jane Doe personally was threatened by Mr. Smith, then this information would have been relayed to the Government's case agents and contained within the presentence report or introduced at trial to show consciousness of guilt. It is not there. Instead, it is clear that Jane Doe also heard rumors and innuendo that Mr. Smith had threatened her. To the best of counsel's knowledge, there are no jail recordings, tablet recordings, tablet messages, or intercepted mail from Mr. Smith, nor the same from any other inmate, that reveal Mr. Smith willfully obstructed or attempted to obstruct justice through threats. Instead, such recordings reveal the opposite: that Mr. Smith believed he would be released and that everything was fine between him and Jane Doe.

  The Government further attempts to corroborate CS by stating that a witness was in fact threatened. Again, however, there is no information that these threats came from Mr. Smith, or if others on their own independently decided to act without Mr. Smith's knowledge or directive. If the witness was threatened, CS and the Government is speculating that it was at Mr. Smith's direction—the willful act required by the enhancement. There is no evidence to support this.

  Likewise, assuming for the sake of argument that Jane Doe herself was in fact threatened or "green lit", there is zero evidence that it was done by Mr. Smith or at his direction. If others in Mr. Smith's circle threatened Jane Doe, then such actions are abhorrent. But, they do not warrant

Mr. Smith himself receiving an enhancement for obstruction or allowing the Government to ask the court to consider such repugnant behavior against Mr. Smith when considering a sentence <u>until and unless there is evidence indicating Mr. Smith's involvement.</u> It is easy to presume that Mr. Smith—the one on trial—is the source of any threats or wanton conduct, but a court is no place for speculation and surmise. Furthermore, the Government emphasizes that Mr. Smith is a member of a criminal street gang. Again, assuming the truth of the Government's allegations, it is equally reasonable that others acted on Mr. Smith's behalf without his knowledge. Such is again not the basis for an obstruction enhancement.

Notably, the Government emphasizes that the court <u>may</u> rely upon the uncorroborated testimony of a confidential source. Mr. Smith does not disagree. If CS had told the case agent that Mr. Smith directed that a witness be threatened, such a statement would certainly be corroborated by the actual threat. But it does not appear that CS has personal knowledge of Mr. Smith making threats, directing that threats be made, or any other similar conduct. It appears that CS merely knows, believes, presumes, or is speculating that Mr. Smith was involved. Essnetially, he heard it on the streets.

There is a difference between uncorroborated information from a confidential source who personally heard from Mr. Smith that threats had been made against Jane Doe, and uncorroborated information from a confidential source that merely expresses a belief that such threats occurred or having heard rumors that such threats occurred. The latter is what appears to be the case here based upon the information previously relayed to the probation officer from the case agents, which one would presume to be thorough and all-inclusive.

In their response, the Government states that it will call the case agent to the stand to testify about the statements made by CS, CS's criminal history, CS's pending charges (if any) and any

3

promises of leniency he may have received, et cetera.[1] By placing the agent on the stand, Mr. Smith is entitled to cross-examine him. Such cross-examination will consist of the nature of his relationship with Mr. Smith, his background and history with Mr. Smith, any grudges or ill-will that may have arisen between him and Mr. Smith, and further avenues of questioning designed to determine the veracity of CS's information and whether or not he harbors any biases against Mr. Smith that would lead the Court to question the truthfulness of his statements.

The law is clear that the rules of evidence at a sentencing hearing differ from a trial and that the hearsay statements may be admitted through Special Thomas. However, the Confrontation Clause of the Sixth Amendment is a trial right that extends to the sentencing hearing, alongside Mr. Smith's rights to due process. Mr. Smith is entitled to a full, complete, and thorough cross-examination of a witness who will be used to offer incredibly serious, aggravating information to the Court. In doing so, the answers to the questions may reveal to Mr. Smith the identity of the confidential source.

This is the risk the Government runs by choosing to present testimony at the sentencing hearing, and the Government should not be allowed to preemptively prevent Mr. Smith from vigorously defending him through a thorough cross-examination of the witness. By having knowledge of who the identity of the CS is, Mr. Smith can fully confer and discuss with his attorney what if any types of biases, disagreements, or reasons to fabricate might exist.

In its request to preemptively sustain the Government's objections, the Government cites *United States v. Zamora*, a 10th circuit opinion holding "that there was no error in the trial court's

---

[1] The Government in its responsive pleading (ECF 121) notes that Special Agent Thomas will testify about the "status as a CS, including any potential benefits received as a result." There is no proffer as to whether or not any such benefits or promises of leniency were made. If such were in fact made though then *Brady*—itself a case that dealt with sentencing—requires such information to be turned over pursuant to the Government's obligations as it would mitigate punishment. *See, e.g., United States v. Weintraub, 871 F.2d 1257 (5th Cir. 1989)*(vacating a sentence where impeachment evidence was not disclosed as it related to a drug weight enhancement); *Strickler v. Greene*, 527 U.S. 263, 119 S. Ct. 1936 (1999)(reiterating the *Brady* applies to the punishment phase)

refusal to require identification of the confidential informant." 784 F.2d 1025, 1030 (10th Cir. 1986). In analyzing the law as it relates to this issue, the *Zamora* court relied upon the United States Supreme Court case of *Roviaro v. United States,* where the high court "recognized an important public interest in ensuring the confidentiality of an informant's identity absent a showing that the informant is 'relevant and helpful to the defense' or is 'essential to a fair determination of the cause'". *Zamora* at 12(citing *Roviaro v. United States*, 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957)). In the Fourth Circuit, appellate courts have held that "when the informant is an active participant in the transactions at issue instead of just a mere tipster, the failure to require disclosure of the informant's identity is more likely to amount to error.'" *United States v. Blevins*, 960 F.2d 1252, 1258 (4th Cir. 1992). *See also United States v. Price*, 783 F.2d 1132, 1138-39 (4th Cir. 1986)).

It does not appear that the CS in this case was an active participant in the allegations levied against Mr. Smith. However, that does not end the analysis. Instead, the *Blevins* court held that "no fixed rule with respect to disclosure is justifiable." *Id.* The trial court must balance "the public interest in protecting the flow of information against the individual's right ot prepare his defense," focusing on "the particular circumstance of each case, taking into consideration the crimes charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 16.

Here, the significance of the informer's testimony as it relates to a potential sentence is paramount. The allegations levied against Mr. Smith are for serious, uncharged criminal conduct. Mr. Smith is not charged with solicitation to commit murder or any other similar crime relating to the CS's allegations. This is likely due to the fact that not only is the information uncorroborated, but it is apparently based upon extended levels of hearsay. Yet, the Government asks the Court to

focus on this post-arrest behavior in justifying their argument for a *de facto* life sentence for Mr. Smith.

The question as to whether or not these threats did or did not occur were never presented to the jury in this case, nor any other jury in state court. Yet the Government further asks the Court to take the allegations as absolute truth and hold them against Mr. Smith. Perhaps recognizing the unfair nature of this scenario, these types of requests are systemically being limited by Congress and the United States Sentencing Commission. Just recently in April, the USSG voted unanimously to end the practice of allowing the Government to request that the court rely upon acquitted conduct as part of sentencing. This occurred following bipartisan support for a Congressional fix to end the practice, coinciding with signaling from the United States Supreme Court that it was poised to rule on the issue. *See "Durbin, Grassley, Cohen, Armstrong Introduce Bipartisan, Bicameral Prohibiting Punishment of Acquitted Conduct Act." U.S. Senate Committee on the Judiciary,* https://www.judiciary.senate.gov/press/releases/durbin-grassley-cohen-armstrong-introduce-bipartisan-bicameral-prohibiting-punishment-of-acquitted-conduct-act (last visited October 3, 2023); *McClinton v. United States*, 21-1557; *Luczak v. United States*, 21-8190, *Shaw v. United States*, 22-118, *City of Ocala Florida v. Rojas*, 22-278, and *Karr v. United States*, 22-5345)(denying certiorari but emphasizing that the issue was ripe for consideration and the denial was due to the pending consideration by the sentencing commission).

Such practice was previously well permitted in this circuit and throughout the country. While the use of acquitted conduct is particularly troublesome because it relies upon facts and arguments that were indeed presented to the jury and rejected, there is little difference or distinction in instead asking the court to rely upon mere allegations from a confidential source that have never stood the test of a trial and likely would not be admissible trial due to varying degrees of hearsay

and speculative.

Here, the balancing test laid out *Blevins* weighs in Mr. Smith's favor. The Government has placed an incredible amount of focus and weight on these post-arrest allegations, requesting numerous addendums to the presentence report after the report already included lengthy recitations of the allegations. The Government seeks a *de facto* life sentence for Mr. Smith, and the obstruction and threatening allegations are part of the calculus of that request. Accordingly, Mr. Smith should not be preemptively denied a full and fair opportunity to cross-examine the witness, even to the extent of potentially revealing the identity.

## **CONCLUSION**

Ultimately, the Government has made the choice to present testimony from Special Agent Thomas at the sentencing hearing to expand beyond the information already provided to the probation officer by that same case agent. Like any other witness, that choice presents risks and the opportunity for Mr. Smith to cross-examine the witness. This testimony will be dramatically different from testimony that might occur at trial because the Government will have free reign to elicit hearsay and otherwise inadmissible statements and testimony from its witness. Accordingly, Mr. Smith should be granted the opportunity, and his right under the Sixth Amendment, to fully and fairly cross-examine Special Agent Thomas as to the confidential source, his relationship with Mr. Smith, and biases he might harbor, the nature of his information, and all of the related issues.

Respectfully submitted,

PIERRE DE ROMEO SMITH

By Counsel

_____/s/_____
S. Mario Lorello
VSB# 80629

7

Counsel for Defendant
ZOBY & BROCCOLETTI, P.C.
P.C. 6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
mario@zobybroccoletti.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of June, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Megan Montoya, Esq.
Rebecca Gantt, Esq.
Assistant U. S. Attorney
Office of the U. S. Attorney
101 W. Main Street, Suite 8000
Norfolk, VA 23510

_____/s/_____
S. Mario Lorello
VSB# 80629
Counsel for Defendant
ZOBY & BROCCOLETTI, P.C.
P.C. 6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026